Filed 10/22/15  P. v. Alegria CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067453 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1200756) |
| ALFONSO MUNOZ ALEGRIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Charles Jacob Koosed, Judge.  Affirmed.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Martin Edward Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Alfonso Munoz Alegria (Munoz) of committing lewd acts upon a child under 14 years old (Pen. Code,[1] § 288, subd. (a); count 1 (Jane Doe No. 1); and count 8 (Jane Doe No. 3)); lewd acts by force or fear upon a child under 14 years old (§ 288, subd. (b)(1); counts 2 and 3 (Jane Doe No. 1), and counts 5, 6, and 7 (Jane Doe No. 2)); and sexual penetration by force or fear of a child under 14 years old (§ 269, subd. (a)(5); count 4 (Jane Doe No. 2)).  The jury also found true an allegation that Munoz had molested more than one victim.  (§ 667.1, subdivision (e)(4).)   The court sentenced Munoz to a total term of 130 years to life in state prison.

Munoz contends the court (1) erroneously admitted into evidence his uncharged acts under Evidence Code section 1108 to prove sexual propensity, thus violating his constitutional right to due process; and (2) abused its discretion by excluding certain evidence, thus violating his rights to present a defense, a fair trial and due process of law.  We affirm the judgment.

BACKGROUND

Munoz does not challenge the sufficiency of the evidence to support his convictions, therefore we do not set forth the details of his different convictions.  We summarize only the facts necessary to address his appellate claim that the court erred by admitting evidence of his uncharged crimes.

---

[1]    Statutory references are to the Penal Code unless otherwise stated.

*Jane Doe No. 1 (counts 1, 2 and 3)*

Jane Doe No. 1 was 19 years old at the time of trial. Munoz is her step-grandfather. She testified that one night, when she was approximately nine years old, she was leaving the bathroom at Munoz's house when he unzipped her shorts and touched her vagina. He told her to be quiet and not say anything or else her grandmother and parents would get mad. On another occasion, when she was at her grandparent's house, he put her on his lap, touched her vagina and tried to kiss her mouth. He told her not tell anyone. In a third incident, he tried to touch her breast and kiss her but she shoved his hand away.

*Jane Doe No. 2 (Counts 4, 5, 6, 7)*

Jane Doe No. 2 was 16 years old at the time of trial. She and her two brothers were adopted by Munoz and his wife. In December 2011, Jane Doe No. 2 disclosed to her birth mother that Munoz had molested her. A few days afterwards, Jane Doe No. 2 told a forensic examiner the details of Munoz's sexual misconduct. Specifically, when Jane Doe No. 2 was about five or six years old, Munoz touched her vagina. About six weeks later, Munoz touched Jane Doe No. 2 again, telling her that if she told her grandmother, she would get mad and not want to see Jane Doe No. 2 anymore. Munoz also stuck his finger in Jane Doe No. 2's rectum. Munoz tried to have Jane Doe No. 2 touch his penis. Munoz tried to put his tongue in Jane Doe No. 2's mouth, but she pushed him away. In a separate incident, Munoz squeezed her buttocks. In another incident, Munoz touched her buttocks and rubbed his penis against her buttocks while she was brushing her teeth. She was approximately 10 years old the last time Munoz tried to

3

touch her inappropriately. At trial, Jane Doe No. 2 recanted all the incriminating statements she had made to the examiner. Jane Doe No. 2 denied that Munoz had ever sexually molested her. The jury saw a video recording of Jane Doe No. 2's forensic interview.

*Jane Doe No. 3 (Count 8)*

Eight-year-old Jane Doe No. 3 testified that when she was seven years old, Munoz rubbed her vagina with his hand. She told him she was going to bed, and he kissed her on the mouth. She reported the incident to her mother right away.

*The Prosecution's Motion to Admit Into Evidence Munoz's Uncharged Crimes*

At the start of trial, the People moved in limine to introduce evidence of Munoz's uncharged crimes against three different females. (Evid. Code, § 1108.) The prosecutor sought to introduce the uncharged crimes under Penal Code, section 647.6, and referred to the elements of the crime as stated in CALCRIM No. 1122: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant engaged in conduct directed at a child; [¶] 2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; [¶] 3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child."

Munoz objected to the testimony of two of the victims, arguing they had not claimed that Munoz touched them; therefore, his uncharged crimes against them were different from the charged crimes. He further argued that under Evidence Code section 352, the proffered testimony was more prejudicial than probative and would require a

4

trial within a trial. However, as to the testimony of Jane Doe No. 6, defense counsel conceded it would be admissible: "Your Honor, I'm reasonable. I'll submit on that last one, you know, if there was contact, I'm not going to sit here and say that contact was appropriate and it would be covered [under Penal Code section 647.6 and Evidence Code section 1108] if somebody was—if that child is going to say 'I was bothered because he hit me. I didn't tell him to do it[.]' [Y]ou know, I have to keep my credibility here."

Applying the criteria set forth in *People v. Falsetta* (1999) 21 Cal.4th 903, 916-917 (*Falsetta*), the court admitted into evidence some of the uncharged crimes testimony and excluded others. The court stated the uncharged crimes were "fairly simple in nature; in other words, the acts the witnesses will be testifying to appear to be just, you know, isolated incidents, but something that happened that seemed relatively simple as far as their proof is concerned. I don't think it's going to confuse the issues at all. The prejudicial impact, I think, does not outweigh the relevance. I think they're highly relevant. I don't think this places undue burden on the defendant." The court acknowledged that Munoz's prior uncharged acts were not similar to his charged crimes, but did not find that single factor sufficient to exclude the uncharged crimes evidence.

*Testimony Regarding Munoz's Uncharged Crimes*

Jane Doe No. 4 was twenty-four years old at the time of trial, and testified that when she was 15 years old and a volunteer at the church where Munoz was a pastor, he called her into his office, shut the door, and told her to start modeling so he could see what she was wearing. She complied with his requests to kneel down, bend over, turn around and walk around the room.

5

Jane Doe No. 5 was 27 years old at the time of trial, and testified she had attended the church where Munoz was pastor. One day, when she was 17 years old, Munoz called her into his office, closed the door, asked if he could give her a hug and proceeded to hug her and kiss her on the cheeks four times. She felt uncomfortable and weird, felt he was going to kiss her lips, and pushed him away.

Jane Doe No. 6 was 25 years old at the time of trial and testified Munoz was her pastor when she was younger. When she was 15 years old, she was babysitting at his house one day, and he sat next to her, hugged her, and pulled her close as if to hug her. She felt uncomfortable and stood up to get water. He followed her and spanked her on the buttocks. Immediately afterwards Jane Doe No. 6 telephoned Munoz's wife, who picked her up and took her home.

DISCUSSION

I.

*The Court Did Not Err By Admitting the Uncharged Crimes Evidence*

Munoz contends his uncharged acts involving "questionable conduct with post-pubescent teenage girls" were inadmissible under Evidence Code section 1108 because they were different in nature from the charged offenses, which involved allegations he "touched the private areas of prepubescent granddaughters." He also argues the uncharged crime testimony was prejudicial under Evidence Code section 352 because it "created too great a risk that the jury would wish to punish him for the [uncharged crimes] regardless of whether sufficient evidence of guilt was presented as to the charged offenses." He further claims he "provided evidence upon which jurors could have relied

6

to find the victims had motive to make false allegations. The defense theory was that [Jane Doe No. 2's mother and the mother's sister] respective mothers of Jane Doe No. 2 . . . and Jane Doe No. 3. . . , were friends and bore a grudge against [their mother and Munoz]."

A. *Legal Principles*

Evidence Code section 1108 sets forth an exception to the general rule against the use of evidence of a defendant's misconduct apart from the charged offense to show a propensity to commit crimes. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159-1160.) When a defendant is charged with a sex offense, Evidence Code section 1108 allows admission of evidence of other sex offenses to prove the defendant's disposition to commit sex offenses, subject to the trial court's discretion to exclude the evidence under Evidence Code section 352. (Evid. Code, § 1108, subd. (a); *People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) Evidence Code section 1108 is premised on the recognition that sex offense propensity evidence is critical in sex offense cases given the serious and secretive nature of sex crimes. (*Falsetta, supra,* 21 Cal.4th at p. 918.) Furthermore, the uncharged and charged offenses are considered sufficiently similar if they are both sexual offenses enumerated in Evidence Code section 1108. (*People v. Frazier* (2001) 89 Cal.App.4th 30, 41.)

When applying Evidence Code section 1108 in a particular case, a defendant's fair trial rights are safeguarded by requiring the trial court to engage in a careful weighing process under Evidence Code section 352 to determine whether the probative value is

substantially outweighed by the danger of undue prejudice, confusion, or time consumption. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 916-917.)

The prejudice that exclusion of evidence under Evidence Code section 352 is designed to avoid "is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) " 'In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating [it] to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 286.)

Based on Evidence Code section 1108, the presumption is in favor of the admissibility of other sex offense evidence; however, the evidence should not be admitted in cases where its admission could result in a fundamentally unfair trial. (*People v. Loy* (2011) 52 Cal.4th 46, 62; *Falsetta, supra,* 21 Cal.4th at p. 917.) When evaluating the other sex offense evidence, relevant factors include "its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to

8

the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission." (*Falsetta*, at p. 917.)

On appeal, we review the trial court's admission of Evidence Code section 1108 evidence, including its Evidence Code section 352 weighing process, for abuse of discretion. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104-1105; *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1097.) "We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling ' "falls outside the bounds of reason." ' " (*People v. Dejourney*, at p. 1105.) Alternatively stated, we will not reverse a trial court's exercise of discretion under Evidence Code sections 1108 and 352 unless its decision was arbitrary, capricious or patently absurd and resulted in a manifest miscarriage of justice. (*People v. Lewis, supra,* 46 Cal.4th at p. 1286; *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116.)

B. *Analysis*

The trial court's decision to admit the uncharged crimes testimony was not arbitrary or capricious. Rather, the court applied the *Falsetta* criteria and concluded Munoz's uncharged crimes were not remote; and they would not confuse the jury because those victims were older. Moreover, although the court recognized the charged and uncharged crimes were not similar, they both involved sexual offenses enumerated in Evidence Code section 1108, subdivision (d)(1)(A). The uncharged crimes were less egregious than the charged crimes, therefore admission of the uncharged crimes would not inflame the jury's emotions against Munoz.

9

Munoz also raises a facial challenge to the constitutionality of Evidence Code section 1108, which he claims violates due process. But he recognizes the California Supreme Court has rejected this contention in *Falsetta, supra,* 21 Cal.4th at p. 917, and we are obligated to follow it under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450. He raises the issue here to preserve it for federal review.

II.

*The Court Did Not Err by Excluding Certain Hearsay Testimony*

Munoz contends the court erroneously sustained the prosecutor's hearsay objection to a question made to Jane Doe No. 1 on cross-examination because the question required a simple yes or no answer and, in any event, the information a likely follow-up question would have elicited was not being offered for its truth, but to "support the defense theory that [Jane Doe No. 2's mother] had a motive to persuade Jane Doe No. 2 . . . to make up the allegations against Munoz."

A. *Background*

On cross-examination of Jane Doe No. 1, defense counsel asked, "Did you ever hear any conversations between [Munoz's wife and Jane Doe No. 2's mother] about custody of [Jane Doe No. 2 and two of her brothers]?" The People objected on hearsay grounds and the court sustained the objection. The court similarly sustained a hearsay objection to the next question that defense counsel asked: "Did [Jane Doe No. 2's mother] ever talk to you about custody of her children?"

10

B. *Applicable Principles*

We review for an abuse of discretion the trial court's decision to exclude evidence based on the hearsay rule. (*People v. Pirwani* (2004) 119 Cal.App.4th 770, 787.) Under this standard, the trial court's ruling will not be disturbed in the absence of a showing by defendant that the court exercised its discretion "in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) We review the record and recite the facts in a light most favorable to the judgment. (*People v. Hill* (1998) 17 Cal.4th 800, 848-849.)

Evidence Code section 1200, subdivision (a), states: " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." "Hearsay is generally excluded because the out-of-court declarant is not under oath and cannot be cross-examined to test perception, memory, clarity of expression, and veracity, and because the jury (or other trier of fact) is unable to observe the declarant's demeanor." (*People v. Cudjo* (1993) 6 Cal.4th 585, 608.)

C. *Analysis*

The court did not err by concluding defense counsel's question to Jane Doe No. 1 would elicit hearsay information. Although the call of the first question was for an affirmative or negative response, the subject matter underlying the question involved statements by persons other than the testifying witness, and therefore a likely follow-up question would have elicited impermissible hearsay testimony. Although Munoz claims that the information sought by the challenged question was not being adduced for its

11

truth, that assertion is belied by Munoz's claimed purpose for that testimony: to show that Jane Doe No. 2's mother was conspiring to persuade her daughter to fabricate stories about Munoz. That purpose could only reasonably be achieved if in fact it was true that Jane Doe No. 2's mother and grandmother had conflicts between them regarding Jane Doe No. 2 and her siblings.

In any event, the defense counsel in closing arguments fully explained the family tension between Jane Doe No. 2's mother and grandmother: "Now [Jane Doe No. 2's mother]. [She] is big for me, because [she] is one of, if not the, coconspirator in this case. She's the reason why [Jane Doe No. 2's grandmother] took those three children and raised them. [The prosecution] brought in a Georgia witness, but they didn't bring [Jane Doe No. 2's mother] because they didn't want you to see [Jane Doe No. 2's mother's] reaction, [her] anger, [her] frustration. It was during the trial that we saw that [Jane Doe No. 2's mother and Jane Doe No. 3's mother] lived together. It was not noted in any of the reports. And, folks, they put these allegations together. The verbal abuse, disrespect, and anger growing up led that family to get rid of [Munoz]. [¶] Because [Jane Doe No. 2's mother] was probably a bitch. [She] was mean. [She] didn't care for these children, and everybody in the family knew that [Munoz and his wife] adopted children." Therefore the jury was well-apprised of this issue, and nonetheless convicted Munoz. It is not reasonably probable that he would have achieved a different result absent any error in excluding the challenged hearsay testimony. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

12

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McDONALD, Acting P.J.


McINTYRE, J.